UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-22042-CIV-GOLD/McALILEY

FUTURISTIC FENCES, INC.,

     Plaintiff,

v.

ILLUSION FENCE, CORP.,
and MIGUEL DOMINGUEZ,

     Defendants.

_____/

ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIDAVIT;
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ENTERING *SUA SPONTE*
SUMMARY JUDGEMENT IN FAVOR OF DEFENDANTS AS TO COUNT I

     THIS CAUSE is before the Court upon: (1) Plaintiff's Motion to Strike Defendants'

Affidavit [DE 114]; (2) Defendants' Motion for Summary Judgment [DE 95]; and, (3)

Plaintiff's Motion for Summary Judgment as to Count I of the Amended Complaint [DE

102]. The parties have filed responses and replies, as well as affidavits and other

summary judgment evidence in support of their arguments. I held oral argument on the

subject motions on April 18, 2008. Thereafter, I instructed the parties to file supplemental

briefs on the Central District of California's decision in *Avery Dennison Corporation v. Acco*

*Brands, Inc., et al.,* Case No. 99-1877DT, 2000 WL 986995 (C.D. Ca. Feb. 22, 2000).

Having reviewed the motions and related pleadings, the record, the parties' arguments and

the relevant case law, I conclude that Plaintiff's Motion to Strike Defendant's Affidavit and

Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint

must be denied. As to Defendants' Motion for Summary Judgment, while I deny the motion

1

on the grounds raised by Defendants, I find it appropriate to enter *sua sponte* summary judgment in favor of Defendants as to Count I of the Amended Complaint because the cease and desist letters at issue do not constitute commercial speech as a matter of law.

I.    Factual Background

A.    Undisputed Facts[1]

The following facts are undisputed and supported by evidence in the record:

1.  Plaintiff Futuristic Fences, Inc. ("FFI"), a Florida corporation, was formed on October 2004, to manufacture and distribute decorative fence panels. (Piorno Declaration, DE 26 at ¶ 2).

2.  Defendant Illusion Fence, Corp. ("IFC"), a Florida Corporation, was formed by Defendant Miguel Dominguez on November 18, 2004, to manufacture and distribute ornamental fence panels.  (Plaintiff's Statement of Undisputed Facts, DE 24 at ¶¶ 16-17; Defendant's Statement of Disputed Facts, DE 31 at ¶ 13).

3.  Jova Business, incorporated in the State of Florida on February 1999, manufactured and sold decorative fence panels in the United States from approximately February 1999 until October 2004.  (Plaintiff's Statement of Undisputed Facts, DE 24 at ¶¶ 3-5). Mr. Lazaro Jova was the owner and president of Jova Business and the designer of the ornamental fence panel which the parties refer to as the "Jova Design" panel. (Jova

---

[1]

On September 28, 2008, I entered partial summary judgement in favor of Plaintiff as to Count II of the Complaint, seeking a judicial declaration of non-infringement, and Count I of the Counterclaim, for willful patent infringement. (*See* DE 59, as amended by DE 65). Those facts found to be undisputed and supported by evidence in the record in my previous order are incorporated to this order,  and material facts previously established will be included where necessary.

Declaration, DE 25 at ¶ 1).

4. Mr. Dominguez bought fence panels corresponding to the Jova Design from Mr. Jova from about February 1999, up to and including October 2004. (DE 25 at ¶ 8).

5. On October 2004, Mr. Jova sold the equipment used in the manufacturing of the decorative fence panels to Mr. Matias Piorno, President of FFI. (DE 25 at ¶10; DE 26 at ¶1). Shortly after acquiring the Jova Business equipment, Mr. Piorno formed FFI. (DE 24 at ¶¶ 9-10).

6. IFC owns U.S. Design Patent D511,218-the '218 Dominguez Patent ("'218 Patent" or "Dominguez Patent") and manufactures and distributes fence panels corresponding to the design of the '218 Patent. (DE 24 at ¶ 17). The inventor of the '218 Patent is Mr. Dominguez. (*Id.* at ¶ 15).

7. There is no prior filed application, to which the '218 Patent application claims priority. (*Id.* at ¶ 21).

8. Mr. Dominguez was aware of the Jova Design fence panel at the time he submitted his patent application but did not disclose it to the United States Patent Office. (DE 43 at ¶ 10).

9. Plaintiff's products are sold and offered for sale to retail customers throughout the State of Florida. (Plaintiff's Statement of Uncontested Facts, DE 103 at ¶ 1). Plaintiff also sells its products through distributors, who in turn offer Plaintiff's products for resale throughout Florida. (*Id.* at ¶ 2). The distributors also offer Plaintiff's products for export to South and Central American countries. (*Id.* at ¶ 3). On at least one occasion, the Plaintiff sold its fence panels to an individual for installation at a residence in North Carolina. (*Id.*

3

at ¶ 4).

10. Plaintiff's current and former distributors include: World of Tube Corp.; Anchor Fence Manufacturing Corp.; Fence City, Inc.; and, Orange Steel & Ornamental Supply, Inc. (*Id.* at ¶ 9).

11. According to Fence City Inc.'s Vice President, Rolando Torres, Fence City Inc. has been purchasing and distributing fence panels corresponding to the Jova Design prior to October 2004, and has continued to purchase and distribute these fence panels, manufactured by FFI, from and after October 2004, up to and including the present time. (Torres Declaration, DE 112 at ¶¶ 3-4). All of the products distributed by Fence City Inc. are advertised and offered for sale in Florida, and for export from the State of Florida. (*Id.* at ¶ 5).

12. Plaintiff's products are advertised in various media in Florida which exposes its products to customers in international markets, including the markets of the countries of South and Central America. (*Id.* at ¶ 5). In addition, Plaintiff advertises its products in electronic yellow page listings on the internet, where FFI is listed as a supplier of fence panels by websites that feature and identify businesses by product description. (*Id.* at ¶ 6). In Plaintiff's case, the products are identified under the categories of "fence", "fence panels," and/or "metal fences." (*Id.*).

13. IFC fence panels at issue in this case have never being sold outside of the State of Florida. (Dominguez Declaration, DE 95 at Ex. A). Defendants do not conduct any business outside of the State of Florida. (*Id.*).

14. Plaintiff and Defendants are competitors. (DE 103 at ¶ 7). They promote and/or

4

sell their products to the same distributors within Florida. (*Id.* at ¶ 8).

15. On March 1, 2006, Defendants' counsel sent four cease and desist letters to:

World of Tube Corp.; Anchor Fence Manufacturing Corp.; Fence City, Inc.; and, Orange

Steel and Ornamental Supply, Inc. (Am. Compl., Composite Ex. 4). The letters stated, in

pertinent parts,

> Please be advised that we represent Illusion Fence Co. ... in connection with the above-referenced matter [Re: Infringement of United States Patent No. D511,218]. It has come to our client's attention that your company [sic.] in cooperation with Futuristic Fences, Inc. ... and Mr. Matias Piorno, are manufacturing and/or distributing and/or selling fence panels, infringing our client's patent rights.
>
> ...
> Your company must immediately cease and desist from manufacturing and/or distributing and/or selling the fence panel patented under the above-referenced United States Patent.
>
> ...
> Unless a reply is received within ten (10) days from the day you receive this letter, we will resort to legal remedies.

(*Id.*).

16. On August 15, 2006, FFI filed the instant action [DE 1]. The initial complaint

plead claims for Unfair Competition and Trade Libel under the Lanham Act, and sought a

judicial declaration of non-infringement and injunctive relief. Defendant IFC brought a

counterclaim for willful infringement.

17. On September 27, 2007, following a Markman Hearing and oral argument on

Plaintiff's motion for partial summary judgment, I issued an Order granting summary

judgment in favor of Plaintiff as to Count II of the Complaint, seeking a declaration of non-

infringement, and as to the sole counterclaim. (*See* Order dated Sept. 27, 2008, DE 59).

I also granted Plaintiff leave to file an amended complaint adding Mr. Miguel Dominguez

as a Defendant and asserting a new claim for Unfair Competition under the Lanham Act,

5

based on patent misuse. (*See* Am. Compl., DE 90). On November 19, 2007, I denied Plaintiff's Motion for Injunctive Relief [DE 84].

18. On December 19, 2007, Defendants moved for summary judgment as to all counts of the Amended Complaint [DE 95]. On January 11, 2008, Plaintiff moved for summary judgment as to Count I of the Amended Complaint (Unfair Competition, False Advertising/Misrepresentation).

## II.     Legal Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). Once this burden is satisfied, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). Thus, a non-movant "must do more than present some evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc.,* 853 F.2d at 1560. A factual dispute is genuine

6

only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248.

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Avia Group Int'l,* 853 F.2d at 1560. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255.

A district court may enter summary judgment *sua sponte* if the parties are given adequate notice that they must present all of their evidence. *Flood v. Young Woman's Christian Ass'n of Brunswick, Ga., Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005) (citing *Celotex*, 477 U.S. at 326).

III.    Analysis

A.    Plaintiff's Motion to Strike Defendants' Affidavit

On February 27, 2008, Defendants filed the affidavit of Miguel Dominguez in opposition to Plaintiff's Motion for Partial Summary Judgment [DE 113]. Plaintiff moved to strike the affidavit as untimely and for not comporting with the Court's rules [DE 114]. At the April 18, 2008 hearing, Plaintiff withdrew its argument that the affidavit was untimely since Federal Rule of Civil Procedure 56(c) explicitly provides that: "[t]he motion must be served at least 10 days before the day set for the hearing. An opposing party may serve opposing affidavits before the hearing day." Fed. R. Civ. P. 56(c). However, Plaintiff

requested that the affidavit be stricken because it contains legal conclusions, and other conclusory statements not supported by evidence in the record.

"Conclusory allegations without specific supporting facts have no probative value." *McKenzie v. Citation Corp.*, No. 05-0138, 2007 WL 1424555, *6 (S.D. Ala. May 11, 2007) (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)). Material that is redundant, immaterial, impertinent or scandalous must also stricken from the record in deciding a motion for summary judgment. *Id.* at 8. Finally, hearsay statements, even if stated in an affidavit or deposition, cannot be considered. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."); *Robinson v. LaFarge N. Am., Inc.*, 240 Fed. Appx. 824, 829 (11th Cir. 2007) (stating that inadmissible hearsay is not considered probative evidence) (citing *Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997)). As explained during the April 18, 2008 hearing, I review all summary judgment evidence to determine whether it is admissible and can be considered in deciding the instant motions, or whether it must be stricken. I will review the Dominguez Affidavit, as well as all other evidence in the record, and determine which statements, if any, must be stricken. However, the fact that the Dominguez' affidavit may contain improper statements does not result in the entire affidavit being stricken from the record. Therefore, Plaintiff's Motion to Strike Defendants' Affidavit is denied.

### B.  Defendants' Motion for Summary Judgment

IFC moves for the entry of summary judgment as to all remaining counts of the Amended Complaint on the basis that Plaintiff has failed to establish the required element

8

of interstate commerce. Plaintiff concedes that all remaining claims are premised on alleged violations of the Lanham Act. However, according to Plaintiff, the undisputed evidence demonstrates that Plaintiff's fence panels have been offered for sale outside of the State of Florida and have had an effect on interstate commerce.

Federal court jurisdiction under the Lanham Act extends only to cases in which a trademark has been used in interstate commerce. *See* 15 USCS § 1125 (a) ("Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact ...") (emphasis added); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) (describing "use in commerce" as a "jurisdictional predicate"). "The Lanham Act defines 'commerce' broadly for jurisdictional purposes as 'all commerce which may lawfully be regulated by Congress.'" *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, Case No. 07-11574, 2008 U.S. App. LEXIS 7370, * 8, n. 5 (11th Cir. Apr. 7, 2008) (quoting 15 U.S.C. § 1127). "This grant of jurisdiction has been construed to be 'at least as broad as the definition of commerce employed in any other federal statute.'" *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 838 (11th Cir. 1983) (quoting *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 n. 3 (11th Cir.1983)). As such, the "in commerce" jurisdictional requirement is satisfied where there is an "effect" on interstate commerce. *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773 (11th Cir. 1996) (finding that the "in commerce" requirement had been met because the marketing and sale of the subject products had an effect on

9

interstate commerce); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453, n. 1 (11th Cir. 1984) ("Therefore, this case satisfies the 'in commerce' jurisdictional requirement under the law of this circuit, which requires only that there be an 'effect' on commerce."). "Advertising that affects interstate commerce and solicitation of sales across state lines . . . is . . . commerce within the meaning of Lanham Act." *Shatel Corp.*, 697 F.2d at 1356.

Here, it is undisputed that Defendants have not conducted any business outside of the State of Florida, and they have never sold or offered for sale IFC fence panels outside of Florida. Defendants point to the deposition of Matias Piorno, president of FFI, in an attempt to establish that FFI has not sold its products outside of Florida either. Specifically, when asked : "Do you sell to suppliers outside of the State of the Florida?", Mr. Piorno answered: "Outside of Florida, no." (Piorno Depo., 29:19-21, DE 95 at Ex. B). This admission, however, does not end the inquiry. While Mr. Piorno has testified that he does not sell to *distributors* outside of Florida, the undisputed record evidence on summary judgment is that the Florida distributors Mr. Piorno sells its products to in turn offer the FFI's products for export to South and Central America. For example, in his declaration, Mr. Piorno testified that: "The FFI products are sold through distributors who offer the FFI products for export to South & Central American countries, including specifically Fence City Inc. and Orange Steel & Ornamental Supply Co." (Piorno Declaration, DE 99 at ¶ 4). Additionally, Mr. Rolando Torres, Vice President of Fence City, Inc., has testified that it has purchased and distributed FFI fence panels since October 2004 to the present time, including the fence panels at issue in this litigation, and it has both advertised these products and offered them for sale in Florida and for export from the State of Florida. (Torres Declaration, DE 112 at ¶¶ 3-5).

10

Similarly, it is undisputed that Plaintiff's products are advertised in various media in Florida which exposes its products to customers in international markets, including the markets of the countries of South and Central America; and that Plaintiff also advertises its products in electronic yellow page listings on the internet. The jurisdictional requirement is met where, as here, interstate advertising has an effect on solicitation of sales across state lines. *Cf. Shatel Corp.,* 697 F.2d at 1356, n. 3 ("Advertising that affects interstate commerce and solicitation of sales across state lines. . .is. . .commerce within the meaning of Lanham Act."). Finally, it has been established through undisputed summary judgment evidence that, at least on one occasion, the FFI fence panels where sold to a customer for installation in North Carolina.

These additional facts submitted by Plaintiff do not contradict Mr. Piorno's testimony that he has never sold to *distributors* outside of Florida. However, as the undisputed evidence shows, Mr. Piorno has sold to at least one *customer* who installed the panels outside of Florida, and the Florida distributors Mr. Piorno has conducted business with have offered the panels for export outside of Florida. Therefore, the broad in commerce jurisdictional requirements has been established and Defendants' motion for summary judgment must be denied. Nonetheless, as will be furthered discussed in Section III.D of this Order, summary judgment as to Count I must be entered in favor of Defendants because, as a matter of law, the cease and desist letters do not constitute commercial speech and are therefore not actionable under the Lanham Act.

C.  Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint

In Count I of the Amended Complaint, Plaintiff brings a claim for false

11

advertising/misrepresentation under the Lanham Act. According to Plaintiff, the four cease and desist letters sent by Defendants' counsel to existing and prospective FFI customers with allegedly false allegations of patent infringement constitute unfair competition under § 1125(a). Defendants oppose the motion on the grounds that the cease and desist letters are not commercial speech and that the in commerce requirement is not present. In addition, Defendants argue that there are material disputes of fact as to: (1) whether Defendants knew that the cease and desist letters contained false information and whether Defendants were even aware that their counsel was sending such letters; (2) whether the cease and desist letters adequately apprised the relevant purchasing market; and, (3) whether plaintiff has suffered any damages.

The Lanham Act provides, in relevant part, that:

False designations of origin, false descriptions, and dilution forbidden–
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– ...
(B) *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USCS § 1125(a)(1)(B) (emphasis added). To succeed on a false advertising claim, the plaintiff must prove that: (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been -- or is likely to be -- injured as a result of the false advertising. *Hickson Corp. v. N. Crossarm Co.*, 357

12

F.3d 1256, 1260-1261 (11th Cir. 2004) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)). There are two preliminary questions that must be answered before examining the elements of the cause of action. First, a court must decide whether the jurisdictional "in commerce" requirement has been established. As discussed in Section III.B, Plaintiff has established, through the undisputed summary judgment evidence, that the broad jurisdictional requirement is present in this case. Second, a court must be mindful that the "Lanham Act prohibits only those false or misleading statements that occur in the context of 'commercial advertising or promotion'". *Optimum Techs., Inc. v. Home Depot USA, Inc.*, Case No. 04-3260, 2005 U.S. Dist. LEXIS 34776, ** 14-15 (N.D. Ga. Dec. 2, 2005); *see also Garland Co. v. Ecology Roof Sys. Corp.*, 895 F. Supp. 274, 277 (D. Kan. 1995) ("[T]his court has found no indication that Congress, through its use of the language commercial advertising or promotion,' intended to extend Lanham Act coverage to every isolated alleged misrepresentation made to a potential customer by a business competitor."). I thus turn to this preliminary issue.

To be actionable under the Lanham Act, the speech at issue must be commercial in nature. *See Lockheed Martin Corp. v. Boeing Co.*, Case No. 03-796, 2005 U.S. Dist. LEXIS 15365, *10 (M.D. Fla. Mar. 21, 2005). The Eleventh Circuit has said that "commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests, exclusive of beliefs and ideas." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1204 (11th Cir. 1986). Although the Eleventh Circuit has not articulated a test to determine whether misrepresentations are 'commercial

advertising or promotion' within the meaning of the Lanham Act, district courts in this circuit have applied the four-part test set forth in *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y.1994) and adopted by the majority of other circuits, and I find no reason to depart from the application of this test. *See, e.g., Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1164 (S.D. Fla. 2005); *Optimum Techs., Inc.*, 2005 U.S. Dist. LEXIS 34776, at ** 14-15. Under the *Gordon & Breach* test, for statements to fall within the meaning of "advertising or promotion," the statements must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classical advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Id.*; *see also Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379 (5th Cir. 1996) (adopting the *Gordon & Breach* four-part test); *Procter & Gamble, Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000) (same); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (same); *but cf. Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002)( adopting the first, third and fourth elements of the *Gordon & Breach* test, but declining to express an opinion on whether misrepresentations in "commercial advertising and promotion" must be made by a defendant in commercial competition with the plaintiff).

The allegedly false statements at issue in this case were included in cease and desist letters sent by Defendants' attorney to four distributors which were current and potential customers of FFI. The parties did not discuss any cases in which cease and

14

desist letters or other communications made by an attorney were at issue. My independent review of the case law revealed only one such case: *Avery Dennison Corp. v. ACCO Brands, Inc.,* Case No. 99-1877, 2000 WL 986995 (C.D. Ca. Feb. 22, 2000).[2] The case involved a counterclaim for false advertising asserted by the defendant after the court found that defendant had not infringed plaintiff's trademark. In *Avery*, the Central District of California applied the four-part test cited above, which has been adopted by courts in this circuit, to determine whether letters sent by the plaintiff's attorney, which the court characterized as cease and desist letters, constituted commercial speech. The letters at issue were sent after a lawsuit for trademark infringement had been filed. The letters "did not ask the recipients not to buy Acco's products; rather, they asked the recipients not to use the allegedly infringing packaging in their catalogs." *Id.* at *8. The recipients of the letters were customers of both parties. The court noted that "[f]rom a reading of the content ..., it is clear that these letters consisted of cease and desist language rather than any marketing or sales pitch." *Id.* Concluding that the letters were not used as a sales and marketing tool to discourage customers and prospective customers from buying a competitor's product, and that a company's attorney does not send letters for the purpose of influencing customers to buy only the company's products, the court held that the cease and desist letters did not constitute an advertisement as a matter of law. *Id.* The two key factors discussed by the court were that: (1) the central message of the letters was the plaintiff's belief that its legal rights were being violated and that it did not want the recipients to continue that violation; and, (2) the purpose of the letter was not to influence the

---

[2]

At the hearing, I instructed the parties to submit supplemental briefs discussing this opinion.

recipients to only buy the company's goods; rather, the letter sought to inform customers of the alleged infringement and to stop the recipients from promoting or publishing the other company's goods.

Plaintiff argues that the reasoning from *Avery* is inapplicable to this case because: (1) the letters in *Avery* were sent by the plainitff's attorney after litigation had been filed; (2) the letters purported to convey information about the current lawsuit; (3) there was no threat to sue the recipient; (4) the recipients were customers of the plaintiff; and, (5) the California District Court interpreted the "advertising" and "promotion" requirements of the Lanham Act as limited to classical "marketing sales pitch." (Plaintiff's Response to District Court Request for Comment on *Avery*, DE 123 at pp. 1-2). I disagree.

The fact that the letters were sent after the lawsuit had been initiated and informed the recipients of the claims of infringement would not change the outcome in *Avery.* In fact, cease and desist letters are generally sent prior to the filing of a lawsuit. Additionally, although Plaintiff argues that the letters did not threaten to sue the recipients, nowhere in the *Avery* opinion is the content of the letters reproduced, and the court did not specify whether the letters indicated that further legal action would be taken if the recipients did not cease the alleged infringing activity; it was simply not a factor the *Avery* court discussed. Moreover, cease and desist letters generally inform the recipient that legal action will be taken if the alleged infringement continues. Similarly, Plaintiff's assertion that the *Avery* court limited the "advertising" and "promotion" requirements to classical "marketing sales pitch" is incorrect. The *Avery* court stated:

> It is clear that speech which merely proposes a commercial transaction falls within the boundaries of commercial speech. The Supreme Court has also indicated that it would regard as commercial speech any expression related solely to the economic interests of the speaker and its audience. In sum, the

16

Supreme Court has abstained from creating bright-line rules in this area and so should we. Thus, the Ninth Circuit has directed the Court to examine the disputed communication in light of its surrounding circumstances to determine whether it is entitled to the qualified protection accorded to commercial speech.

*Avery*, 2000 WL 986995, at *7 (internal quotations and citations omitted). Further, the court specifically stated that in determining whether the letters constituted "advertising or promotion," it would apply the four-part test discussed above, which, as noted, has been adopted by district courts in this circuit. *Id.* Finally, although Plaintiff is correct that the letters in *Avery* were sent to current customers of both parties, I find this distinction to be of no consequence.

As in *Avery*, the letters in this case were sent by Defendants' attorney, not as a marketing and sales tool, but in an attempt to protect IFC's legal rights which IFC believed were being infringed. As in *Avery*, the letters asked the recipients to discontinue the alleged violations of IFC's rights. Ultimately, just like the plaintiff in *Avery*, IFC's assertions that FFI's fence panels were infringing its patent rights were incorrect. However, this does not change the fact that the purpose of the letter was not to influence the recipients into buying IFC panels; rather, the purpose of a cease and desist letter is to inform the recipients of allegations of infringement, to give them a chance to discontinue the infringing activity, and to protect the sender's legitimate legal rights. *Avery*, 2000 WL 986995 at *8.

I find the holding in *Avery* to be particularly applicable to situations where, as here, the sender of the letter holds an issued patent. While courts in this circuit have not addressed the question, I find persuasive the rule that cease and desist letters do not confer personal jurisdiction over the sender as the letters cannot constitute engagement in general business activity. *See, e.g., Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,

17

348 F. Supp. 2d 1335, 1341 (S.D. Fla. 2004) (citing *Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002), in which the court held that cease and desist letters in a patent infringement cannot confer personal jurisdiction over the sender). In discussing personal jurisdiction, courts have stated that cease and desist letters are sent for the purpose of warning against infringement. *Id.* Additionally, courts have recognized that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Geodetic Servs. v. Metronor AS*, Case No. 98-1416, 1999 U.S. Dist. LEXIS 22531, \*12 (M.D. Fla. Nov. 1, 1999) (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998)). While these cases discuss the issue of personal jurisdiction, the notion that patentees have the right to inform others of alleged infringement through cease and desist letters is applicable here. Moreover, to collect damages in a patent infringement case, the patentee must notify the infringer of the infringement. *See* 35 U.S.C. § 287(a).[3] I thus conclude that a patent holder has the right to send cease and desist letters for the purpose of discontinuing allegedly infringing activity without subjecting the patentee to liability under the Lanham Act. I do not comment on whether a cease and desist letter can ever be found to be commercial speech. Rather, I merely hold that under the undisputed facts of this case, with all inferences in favor of the non-moving party for

---

3

Specifically, 35 U.S.C. § 287(a) provides:

> [N]o damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

*Id.*

purposes of summary judgment, the cease and desist letters were not commercial speech as a matter law. There is no evidence on summary judgment that IFC asked its attorneys to send the letter for the purpose of discouraging the recipients from buying FFI fence panels or to encourage the recipients to purchase the fence panels only from IFC. As in *Avery*, the letters did not contain any marketing or sales pitch. Further, if IFC wanted to assert its patent rights against these individual distributors, patent law requires it to notify the alleged infringers of its patent rights. *See* 35 U.S.C. § 287(a). Therefore, the claim for false advertising fails as a matter of law.[4]

D.    *Sua Sponte* Summary Judgement as to Count I of the Amended Complaint

It is a well-established rule in the Eleventh Circuit that where a party has been given adequate notice that it must present all evidence on an issue, the court may enter summary judgment *sua sponte*. *Flood v. Young Woman's Christian Ass'n of Brunswick, Ga., Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005) (citing *Celotex*, 477 U.S. at 326); *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003). When a party moves for summary judgment on one issue, it has been given sufficient notice for the court to enter summary judgment in favor of the non-moving party on that issue. *See id.*

Here, FFI argued, in its motion for summary judgment, that the cease and desist letters constitute commercial speech. Moreover, the Defendants, in its opposition to Plaintiff's motion, challenged Plaintiff's assertion that the letters were actionable under the Lanham Act. In addition, Defendants have moved for summary judgment, albeit on different grounds. Finally, following oral argument, I instructed the parties to file

---

4

Having concluded that the statements at issue are not commercial speech, I do not address the remaining elements necessary to establish a claim for false advertising.

19

supplemental briefs on the commercial speech issue and, specifically, on the *Avery* decision. Therefore, in this case, Plaintiff has received adequate notice that it must present all evidence on this issue.

I have already determined that the cease and desist letters in this case are not actionable under the Lanham Act as a matter of law. Therefore, there is no question for the jury to decide and the claim must be dismissed. Therefore, I find it appropriate to enter summary judgment *sua sponte* as to Count I of the Amended Complaint in favor of Defendants.

V.    Conclusion

For the reasons discussed above, having considered the motions and related pleadings, as well as the pertinent parts of the record and applicable law, and being otherwise duly advised in the premises, it is hereby

ORDERED and ADJUDGED:

1.    Plaintiff's Motion to Strike Defendants' Affidavit [DE 114] is DENIED.

2.    Defendants' Motion for Summary Judgment [DE 95] is DENIED.

3.    Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint [DE 102] is DENIED.

4.    Summary Judgment as to Count I of the Amended Complaint is entered, *sua sponte,* in favor of Defendants.

5.    The Pretrial Conference in this matter remains set for **Friday, June 13, 2008 at 2:00 p.m.** This case remains scheduled for trial during the two-week trial period beginning **July 21, 2008.**

DONE AND ORDERED, in Chambers at Miami, Florida, this ___**30**___ day of May,

2008.

_____

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
United States Magistrate Chris M. McAliley
All Counsel of Record

21